OPINION OF THE COURT
Memorandum.
The judgment of the Appellate Division should be affirmed, with costs.
At issue is the procedure to be followed for challenging county equalization rates adopted in December 1980 by the Westchester County Tax Commission for apportioning 1981 county taxes. Like many counties, Westchester by local law took as its equalization rates the latest available schedule of rates issued by the State Board of Equalization and Assessment (SBEA) — in this case the 1980 advisory schedule issued in November 1980 — adjusting those figures for changes in the level of assessments. As in prior years, the 1980 advisory schedule incorporated the State’s final schedule of equalization rates for 1979. The State’s final rates for 1979 were in turn based on a 1976 market survey of properties. Petitioner municipalities challenged the 1980 county equalization rates before the SBEA, in a proceeding under section 816 of the Real Property Tax Law, alleging various errors in calculation of the 1979 State equalization rate, for example, that 14 properties in the 1976 market survey were overvalued and that the wrong method was used in appraising certain condominium units in Mount Kisco. The SBEA confirmed the conclusion of the hearing officer that, by their failure to challenge the State’s 1979 equalization rates, petitioners had waived any right to question the valuations and methodology used in determining those rates, and additionally found that the rates were fair and equitable. The Appellate Division, two Justices dissenting, confirmed on both grounds.* Without reaching the fairness oif the rates themselves, we affirm.
*952 Article 12 of the Real Propérty Tax Law requires the SBEA to ascertain by means of inquiry and investigation the equalization rates for municipalities and to notify them of tentative rates. In recognition of the significance of these rates to various taxing and other interests of cities, towns and villages (see, Matter of Town of Smithtown v Moore, 11 NY2d 238, 242; 860 Executive Towers v Board of Assessors, 53 AD2d 463, 468, affd sub nom. Matter of Pierre Pellaton Apts, v Board of Assessors, 43 NY2d 769), the statute permits municipalities to challenge the tentative rates; it provides a mechanism for hearing their complaints before the final rates are established; and it affords judicial review (see, Real Property Tax Law §§ 1200-1218). We have in the past emphasized the need to invoke these direct statutory procedures for challenging the State rates (see, Central Buffalo Project Corp. v City of Buffalo, 52 NY2d 986, affg 1A AD2d 336; 860 Executive Towers v Board of Assessors, 53 AD2d 463, 474, supra). Although by law the county was required to adopt State equalization rates (Westchester County Charter § 122.61), petitioners here sought no review under article 12 of the tentative or final State equalization rates for .1979. This failure precludes them from questioning the validity of those same rates in this collateral attack under section 816 of the Real Property Tax Law (see, Central Buffalo Project Corp. v City of Buffalo, 52 NY2d 986, supra). Such preclusion does not vitiate section 816, which allows localities to obtain a determination by the SBEA of the fairness of the county rate. As to counties which now or in the future may set their rates independent of the State rates, municipalities have no other vehicle for their complaints. Further, even if a county adopts the State rates, section 816 gives the municipalities the right to challenge other aspects of the rates which may not be subject to the scheme of review established by article 12.
Chief Judge Wachtlek and Judges Jasen, Meyer, Simons, Kaye and Alexander concur.
Judgment affirmed, with costs, in a memorandum.

 As the SBEA found, and the Appellate Division confirmed, corrections to reflect the 1976 overvaluation, if made, would have involved reapportionment of approximately $186,000 or .0016% of the total county tax levy, thus indicating that the apportionment was not inequitable.